Robinson, J.
The power of the city of Cincinnati to enact an occupational tax ordinance has been declared by this court in the case of State, ex rel., v. *47 Carrel, Aud., 99 Ohio St., 220, the court having there held:
“1. The State of Ohio, under the provisions of Section 10, Article XII of the Constitution, has authority to levy excise taxes in the form of an occupational tax.
“2. Under the grant of power of local self-government provided for in Section 3, Article XVIII of the State Constitution, the city of Cincinnati, as long as the State of Ohio through its general assembly does not lay an occupational tax on businesses, trades, vocations and professions followed in the state, may raise revenue for local purposes, through the instrumentality of occupational taxes.”
The legislature of Ohio by the enactment of Section 6346-1, General Code, has provided: “Sec. 6346-1. It shall be unlawful for any person * * * to engage, or continue in the business of making loans * * * upon the mortgage or pledge of chattels or personal property of any kind, or of purchasing or making loans on salaries or wage earnings * * * at a charge or rate of interest in excess of eight per centum per annum, including all charges, without first having obtained a license so to do from the commissioner of securities and otherwise complying with the provisions of this chapter.” Section 6346-2, after providing for the payment of a “license fee,” has provided that such “license fee shall include the entire cost of inspection or inspections for a period of one year” and that “no other and further license fee shall be required from any such licensee, by the state or any municipality, nor shall any fees charged be collected under Section 736_ of the General Code.” It has further provided for the mode of securing the *48 license and for the execution of a bond to the state of Ohio to secure the observance of the provisions of the act, and has provided that the commissioner of securities shall annually, at least, investigate the business of the licensee. It has enjoined upon the commissioner of securities the duty of prosecuting violators of the act; has in fact*through the commissioner of securities undertaken to regulate the business of such licensee and has undertaken to require the payment of the expense of such regulation of the licensee by the exaction of an annual license fee.
The record does not disclose the number of licenses issued by the state, or the number of agents and assistants employed by the commissioner of securities, or the ¿xpense of that department. The court, therefore, is without the necessary facts to determine whether the revenue secured by the state from such license fees is in excess of the expense of carrying out the provisions of the act. But were these facts disclosed by the record, this court would not with exact nicety make a comparison of the necessary expenditure by the commissioner of securities with the sum of the fees exacted, but would be governed by the purpose of the enactment rather than by the result which its enforcement discloses.
This court in the case of State v. Hipp, 38 Ohio St., 199, has thus defined a license: “ A license is permission granted by some competent authority to do an act which, without such permission, would be illegal.”
Accepting this definition, the legislature enacted Section '6346-1 et seq., and this court, adhering to that definition, and being further influenced by consideration of the regulatory provisions of that and the following sections, is of opinion that the fee ex *49 acted by the enactment is literally a license fee; that the legislature in the enactment of the provision “no other and further license fee shall be required from any such licensee, by the state or any municipality, nor shall any fees charged be collected under Section 736 of the General Code” used the words “license fee” advisedly, and in the sense above indicated; and that its limitation upon the further activities of state and municipalities with reference thereto is confined to the particular scope of the act itself and prohibits the state and municipalities from exacting other and additional license fees, but extends no further.
The ordinance involved in this case, in so far as its provisions are disclosed by the record, does not attempt to make the business unlawful, or to regulate the manner of its operation, or to confer upon the person engaged in the business any privilege, but, on the contrary, assuming the right of persons to engage in the particular line of business, it imposes a tax upon such business, the payment of which is not a prerequisite to the right to engage in such business, any more than the payment of any other excise tax is a prerequisite to the right of a person to engage in the particular business taxed.
We find no conflict between the provisions of Section '6346-1 et seq. and the ordinance of the city of Cincinnati as disclosed by the record.
The judgment of the courts below is affirmed in each case.

Judgments affirmed.

Hough, Wanamaker and Matthias, JJ., concur.
Clark, J., took no part in the consideration or decision of the case.